UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-116 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Aaron Michael Ellerman, | |
| Defendant. | |

This matter is before the Court on Defendant Aaron Ellerman's Objection to the October 14, 2022 Report and Recommendation ("R&R"), issued by Magistrate Judge Leo I. Brisbois. [Objection, ECF No. 39; R&R, ECF No. 38]. Judge Brisbois recommends that Mr. Ellerman's motion to suppress be denied. For the reasons set forth below, the Court overrules Mr. Ellerman's Objections, accepts the R&R, and denies Mr. Ellerman's motion.

I.  **Standard of Review**

After an R&R is issued, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *United States v. Miller*, Crim. No. 20-232(19) (JRT/BRT), 2022 WL 3644894, at *2 (D. Minn. Aug. 24, 2022) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). The Court reviews *de novo* those portions of the R&R to which specific objections are made, and it "may accept, reject, or modify, in whole or in part, the findings or

1

recommendations made by the magistrate judge." *See* 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3).

## II.     Background

Mr. Ellerman does not object to the R&R's factual findings,[1] and the Court recounts the relevant facts here only briefly. On February 25, 2022, while Mr. Ellerman was on parole, the Minnesota Department of Corrections ("DOC") issued a warrant for his arrest for violating the terms of his supervised release. [R&R at 9].

While the arrest warrant remained active, Officer Troy Lennander ("Officer Lennander") drafted an "application and affidavit" for a tracking warrant that would allow law enforcement to track the mobile telephone associated with a phone number ending in 0395, using GPS and cell site location information ("CSLI"). [*Id.*; Tracking Warrant, ECF 45 at 1]. Law enforcement had connected Mr. Ellerman to that cell phone and number based on a monitored inmate call from the DOC prison in Rush City. [R&R at 18; Tracking Warrant at 3-4]. In the tracking warrant application, Officer Lennander explained that Mr. Ellerman was the subject of an outstanding warrant for a parole violation, that he was a fugitive, and that based on a recorded call he received from a prison inmate, he was with another known fugitive. The officer explained that having Mr. Ellerman's cell phone location would help law enforcement locate and arrest him. [R&R at 10; Tracking Warrant and 5-7]. On March 7, 2022, a Ramsey County District Court Judge authorized the tracking warrant, and at some point thereafter, it was executed. [R&R at 10].

---

[1] *See* Objections at 2 ("The relevant facts are not in dispute. Only the law is at issue.").

On March 10, 2022, using electronic surveillance authorized by the tracking warrant, law enforcement officers saw Mr. Ellerman in the backseat of a minivan in Virginia, Minnesota. [*Id.* at 11]. The officers stopped the van and arrested Mr. Ellerman pursuant to the state arrest warrant. [*Id.*].They also found a backpack near where he sat in the vehicle. [*Id.* at 11–12]. Inside the backpack, officers found a firearm, which Mr. Ellerman is now charged with illegally possessing. [*Id.*]. Mr. Ellerman moved to suppress the evidence seized from the backpack, but Judge Brisbois recommended that the motion be denied.

Mr. Ellerman compared the tracking warrant to the "type of administrative warrant discussed in *Carpenter v. United States*, 138 S. Ct. 2206 (2018)," and because the tracking warrant was not a valid search warrant supported by probable cause, it could not constitutionally authorize law enforcement to obtain CSLI connected to his cell phone. [R&R at 13]. But Judge Brisbois found this comparison to *Carpenter* unavailing because: (1) the application, affidavit, and tracking warrant involved here was more extensive than the Stored Communications Act application at issue in *Carpenter*; and (2) at the time the tracking warrant was issued, Mr. Ellerman was a fugitive and there was a valid arrest warrant supported by probable cause, so using GPS surveillance to locate him was appropriate. [*Id.* at 13–14]. Concerning Mr. Ellerman's fugitive status, the R&R examined Seventh Circuit precedent and concluded that "[l]aw enforcement was entitled to use the Tracking Warrant as a tool to locate Defendant, who was himself a fugitive subject to the state Arrest Warrant." [*Id.* at 15–17 (analyzing *United States v. Amaral-Estrada*, 509 F.3d 820 (7th Cir. 2007) and *United States v. Patrick*, 842 F.3d 540 (7th Cir. 2016)).] Finally,

3

the R&R found that Officer Lennander's affidavit provided sufficient information for the issuing judge to have a substantial basis to conclude that probable cause existed to support the tracking order. [*Id.* at 17–19].

### III.  Discussion

In his objections, Mr. Ellerman raises several arguments concerning the sufficiency of the cell phone tracking warrant and the application and affidavit submitted by law enforcement to obtain the authorization to track his phone. Based on the Court's careful review, Mr. Ellerman's objections are overruled.

#### A.  Compliance with *Carpenter*

Mr. Ellerman first argues that the R&R erred in distinguishing the application and affidavit for the tracking order at issue in this case from the administrative subpoenas at issue in *Carpenter*. Specifically, he states that "[l]ike the officer in *Carpenter*, Officer Lennander sought an administrative subpoena/arrest warrant and applied to a neutral magistrate to show a 'reasonable necessity' to obtain the cell-site records." [Objections at 9]. Contrary to Mr. Ellerman's assertion, however, the R&R correctly distinguished the application, affidavit, and tracking warrant from the SCA applications at issue in *Carpenter*. Traditional SCA applications required only a certification, usually from an Assistant United States Attorney, that the information sought is relevant and material to an investigation, and they did not typically include supporting affidavits from law enforcement. *See Carpenter*, 138 S. Ct. at 2231. Such applications neither demonstrated nor required a finding of probable cause. Here, Officer Lennander's sworn affidavit in support of the application for the tracking warrant contained information about the

outstanding arrest warrant for Mr. Ellerman based on an alleged parole violation. The affidavit further stated that the officer believed Mr. Ellerman possessed "Verizon cellular phone 218-[xxx]-0395" because an inmate at Rush City Correctional Facility had called telephone number 218-[xxx]-0395 to contact him. And the affidavit asserted that Mr. Ellerman was a fugitive and was with, at the time of the call, another fugitive. [R&R at 10; Tracking Warrant at 3-4]. Officer Lennander further attested that "analysis of the requested cell phone data/GPS information would assist investigators in the apprehension" of Mr. Ellerman. [R&R at 11; Tracking Warrant at 4]. As importantly, Judge Kyle, a Minnesota state district court judge, determined that there was probable cause to believe that Ellerman was in possession of the target cell phone; that he had an active arrest warrant; and that the tracking information would assist law enforcement in locating him for apprehension purposes. [*Id.*]. The finding of probable cause plainly distinguishes this case from the orders that concerned the *Carpenter* court.

### B.  Using GPS Data to Locate a Fugitive

Second, Mr. Ellerman argues that the R&R erred in concluding that a tracking warrant was a valid means of obtaining information to locate him based on his fugitive status, and improperly relied on a dated Seventh Circuit case in reaching that conclusion. [Objections at 8–9].[2]

---

[2] It is worth noting that *Carpenter* explicitly left open the issue of whether law enforcement's collection of real-time CSLI even constitutes a Fourth Amendment search. 138 S. Ct. at 2220 (stating that "[w]e do not express a view on matters not before us: real time CSLI or 'tower dumps,'" among others). Moreover, as recently observed by a sister court within the Eighth Circuit, that issue remains unresolved by our Court of Appeals. *United States v. Taylor*, Case No. 4:20CR058 SEP/NAB, 2022 WL 3636860, at *11 (E.D.

5

The Court agrees with essential premise of the R&R: that probable cause existed for the tracking warrant because there was probable cause for the arrest warrant. First, Mr. Ellerman cites no authority for the idea that using a judicially approved tracking warrant to locate the subject of a lawful arrest warrant violates the Fourth Amendment, and the Court has found no cases that support such an argument. In addition, the Court agrees with Judge Brisbois's reliance on the Seventh Circuit's decisions in *Amaral-Estrada*, 509 F.3d 820 and *Patrick*, 842 F.3d at 541–45. Though it relied on a different rationale, the *Amaral-Estrada* court affirmed the district court's denial of a suppression motion where a fugitive argued that the government unlawfully tracked his location inside an apartment using real-time cell phone data. 509 F.3d at 828–29.[3] Both the appellate decision and that of the lower court are instructive here. The district court reasoned that, under *Payton v. New York*, 445 U.S. 573, 603 (1980), law enforcement with an arrest warrant are allowed to physically enter the target of the warrant's home to search for that person, and therefore the officers with an arrest warrant for a fugitive may also use cell phone tracking data to locate that

---

Mo. June 14, 2022) (noting the absence of controlling caselaw regarding the need for a warrant in gathering real time CSLI), R&R adopted by No. 4:20-cr-00058-SEP (NAB), 2022 WL 3594581 (ED. Mo. Aug. 23, 2022). Nonetheless, this Court finds that real-time tracking data presents the same concerns that motivated the Court in *Carpenter*, and that the Fourth Amendment applies in this context with equal force.

[3] The *Amaral-Estrada* court ultimately upheld the search at issue based on exigent circumstances. 509 F.3d at 828–29. The R&R quotes *Amaral-Estrada* in a parenthetical for the following proposition: "The Arrest Warrant gave law enforcement the authority to physically enter a target's home in order to search for the target . . . and also gave law enforcement the authority to conduct a less intrusive search for the fugitive by tracking cell location information in an effort to locate him." [R&R at 15]. However, the quoted language appears in the district court's opinion rather than the Seventh Circuit's.

6

person, even if doing so "invaded the apartment he rented." *United States v. Bermudez*, No. IP 05-43-CR-B/F, 2006 WL 3197181, at *11 (S.D. Ind. June 30, 2006).

In *Patrick*, the Seventh Circuit held that there was no Fourth Amendment violation when law enforcement had an arrest warrant supported by probable cause and a second warrant authorizing them to locate the defendant using cell-phone data. 842 F.3d at 542, 545. The *Patrick* court reasoned that the defendant could not "complain about how the police learned his location" because he was arrested in public, where he had no legitimate expectation of privacy. *Id.* at 545. As the R&R in this case observed,[4] the *Patrick* court reached this conclusion, in part, based on *Utah v. Strieff*, 579 U.S. 232 (2016), which held that the existence of an arrest warrant attenuated the link between an unlawful stop and evidence seized as a result of the stop. 842 F.3d at 542.

These cases, though issued before *Carpenter*, address the circumstances presented by this case and demonstrate that it is reasonable for law enforcement to use a tracking warrant like the one at issue here to locate an individual who is wanted on a valid arrest warrant. Indeed, although *Carpenter* made clear that nothing less than probable cause will do for collection of historical geo-location data, it did nothing to undermine the rationale of these Seventh Circuit cases. And this same rationale has been applied by another Court in the post-*Carpenter* era. In *United States v. Taylor*, Magistrate Judge Nannette A. Baker of the Eastern District of Missouri addressed a similar issue and concluded that suppression was not required. 2022 WL 3636860, at *13. In *Taylor*, the defendant had become a person

---

[4] *See* R&R at 15–16.

of interest in a murder investigation, an incident involving threats with a firearm, and several concerning phone calls that law enforcement considered to be threatening. *Id.* at *2–3. Officers began looking for the defendant, but because they could not locate him, he was wanted for questioning in connection with a murder, and had a "probation violation warrant," they sought real time cell phone data from a service provider based on a belief that there were exigent circumstances. *Id.* at *3. Judge Baker's opinion, which was adopted by the district court, assumed that the gathering of the real-time CSLI was a search, found that the exigent-circumstances exception to the warrant requirement did not apply, but ultimately relied on the application of the attenuation doctrine as applied by the Seventh Circuit in *Patrick* in light of the Supreme Court's ruling in *Strieff*. *Id.* at *8–12. The Court finds that the R&R did not err in concluding that the existence of the arrest warrant authorized law enforcement to use real-time cell phone location data to find Mr. Ellerman and effect his arrest.

### C. Probation Violation as Criminal Activity

Mr. Ellerman next argues that Judge Brisbois erred because the tracking warrant application failed to identify any criminal activity in which Mr. Ellerman had allegedly engaged. [*See* Objections at 2, 4, 14–15]. The Court finds this argument unpersuasive. The R&R concluded that the DOC issued an arrest warrant for Mr. Ellerman because he violated the terms of his supervised release. A violation of supervised release conditions is a violation of the law, routinely leading to the issuance of arrest warrants which are given precisely the same weight and power as warrants to arrest persons charged with new offenses. Mr. Ellerman cites no authority for his suggestion that arrest warrants such as the

one at issue here are legally or constitutionally different from other warrants. Therefore, the use of a tracking warrant to obtain cell phone data and locate the target of the underlying arrest warrant is no less valid simply because the arrest warrant is not for a new crime. *See Taylor*, 2022 WL 3636860, at *11–12.

### D. Good Faith

Finally, Mr. Ellerman asserts that the "good faith" exception established by *United States v. Leon*, 468 U.S. 897 (1984) does not apply to the tracking order. [Objections at 17–18]. Even had the tracking warrant at issue in this case failed to provide the issuing judge a substantial basis to conclude that probable cause existed, *Illinois v. Gates*, 462 U.S. 213, 231 (1983), the Court concludes that it was reasonable for the officers who executed the tracking warrant to rely on it. *United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (discussing the circumstances in which reliance on a warrant would be unreasonable).

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Report and Recommendation [ECF No. 38] is **ACCEPTED**.
2. Defendant's Objections [ECF No. 39] are **OVERRULED**.
3. Defendant's Motion to Suppress [ECF No. 25] is **DENIED**.

Date: January 5, 2023

    *s/Katherine Menendez*
    Katherine Menendez
    United States District Judge